OF

# PENNSYLVANIA.

—»)))♦ ⓔ ⓔ⟨⟨⟨⟨—

SOUTHERN DISTRICT, OCTOBER TERM, 1830.

—»))ⓢ ⓔ ⓔ⟨⟨⟨⟨—

## BRYSON'S ROAD.

Pen. & W.
2pw207
196 262

If an order to viewers be taken out of the clerk's office, without the seal of the Court, or the signature of the officer to it, it is a defect, and not a mere informality which the Court may amend, after the report of the viewers is made and returned into the office.

Great latitude must be allowed to viewers in locating a road; particularly as respects the ground which they may deem most suitable.

The act of assembly requires that viewers should be sworn *before* they enter upon their duties; if they first perform the duties and are afterwards sworn, it is a fatal exception to their report.

Depositions taken and filed in the Court of Quarter Sessions, and sent up with the record on a certiorari, may be read in this Court in support of an exception founded on fact.

CERTIORARI to the Court of Quarter Sessions of Cumberland county.

This case originated out of a petition for the appointment of viewers to lay out a road "commencing at a point on the public road leading from Lisburn to Carlisle, at or near a house on the land of the heirs of *William Bryson,* deceased, now in the occupancy of *Samuel Kozier,* to a point on the state road, at or near the house of *Jacob Gehr,* in Allen township."

There were several views and reviews, in the couse of which two routes were located, the "eastern" and "western route."

(Bryson's Road.)

To the report of reviewers exceptions were filed; upon the argument of which the Court made the following order:

"12 Aug. 1829. This report being objected to, two routes are contended for; to settle the matter a re-review is appointed; both routes and parts adjacent to be viewed and the re-reviewers to report to next sessions."

At the next sessions a report was made in favor of the eastern route: to which the following exceptions were taken:

1. There was no authority given to the reviewers to make a report, the order having neither the seal of the Court, nor the signature of the officer to it.

2. No order such as was made by the Court of Quarter Sessions on the 12th August, 1829, issued to the re-reviewers appointed at that time.

3. The road as located by the re-reviewers who sign the report, does not begin at or near the point mentioned in the prayer of the original petitioners.

4. The re-reviewers did not re-review both routes as they were ordered by the Court.

5. The re-reviewers were not sworn *before* they performed the duties of their appointment.

These exceptions were over-ruled and the report confirmed. The same were insisted upon in this Court.

To support the exceptions, several depositions were taken in the Court below, which were filed, and sent up with the record. To the reading of these depositions objection was made, on the ground that no matter of fact could be investigated in this Court. This objection was over-ruled, and the depositions were read.

*Watts* and *Carothers* in support of the exceptions.

*Alexander*, contra.

The opinion of the Court was delivered by

Ross, J.—Five exceptions have been taken to the confirmation of the decree of the Court of Quarter Sessions in the matter of the road "leading from a point in the road from Lisburn to Carlisle, at or near a house on the land of the heirs of *William Bryson*, deceased, now in the occupancy of *Samuel Kozier*, to a point on the state road at or near the house of *Jacob Gehr*, in Allen township." The first exception is, that there was no authority given to the viewers to make a report, the order having neither the *seal* of the Court, nor the signature of the officer to it. The validity of this exception is resisted on two grounds. 1. That the omission of the signature and seal was mere informality; and which the Court might direct to be amended at any time after the return of the order and

(Bryson's Road.)

report, as was done in this case. 2d. That there was an acquies-
cence after the omission was shown, if not an agreement, on the
part of *Robert Bryson*, one of the . most prominent opposers of
the decree of the Court, that the re-reviewers should proceed and
examine the ground. I have found no decision, which authorizes
the Court to supply the omission of the signature and seal on the
return of the order and report. It is decided in *Benjamin* v. *Arm-
strong*, 2 *Serg. & Rawle*, 392, that the defendant cannot take
advantage of the omission of the Prothonotary's name to process,
if it be under seal, after appearing and pleading to issue—and that
such defect in process is also made good by the act of the 2d of
March, 1805. But by a reference to the 6th section of the act,
it will be seen that it has no application to the present case—Be-
sides, in that case, the signature only was omitted—the seal hav-
ing been affixed. The seal is what gives authenticity to the pro-
cess; or order of the Court; and therefore it was very correctly
said in that case, that the omission was but informality. The
second branch of this exception rests on, evidence contained in
the depositions taken on notice, and filed on the argument before
the Court of Quarter Sessions, and returned with the record to
this Court. After the most careful and attentive consideration of
the depositions, it appears to me that such acquiescence or agree-
ment as would amount to a waiver of the objection, has not been
satisfactorily proved.

The second exception is, that no order such as was made by
the Court of Quarter Sessions on the 12th of August, 1829, issued
to the re-reviewers at that time. This objection is contradicted by
the record itself. The order made by the Court was general and
in the usual form, and it is so issued to the re-reviewers.

The third and fourth exceptions may be considered together.
They both depended on matters *in pais*, which it was the pro-
vince of the Court of Quarter Sessions to decide. Great latitude
must be allowed to viewers in locating a road—particularly as
respects the ground, which they may deem the most suitable.
These exceptions were not, however, as I understood, insisted
upon in the argument.

The fifth exception is that the re-reviewers were not sworn be-
fore they performed the duties of their appointment. This ex-
ception is fatal. By the 3d section of the act of the first of
March, 1815, *Purd.* 733, it is provided, "that all viewers of
roads, &c., shall, before they enter upon the duties assigned
them, take an oath or affirmation, &c. that they will perform the
duties of their appointment with impartiality and fidelity, &c.;
and it shall be the duty of the clerk of the Quarter Sessions,
from which such order of view shall be issued, to direct therein,
that the reviewers thereby appointed, shall, before they enter

27

(Bryson's Road.)

upon their duties, be respectively sworn or affirmed." The language of this act is clear and explicit, and too plain to be misunderstood. The viewers are directed to be sworn or affirmed *before* they enter upon the duties of their appointment. What are the duties of their appointment? Certainly the most important part of their duty is carefully to view and examine the ground, over which the road is asked to be laid, as well as the ground adjacent thereto. The public is much interested in laying out roads. The expense of opening them and keeping them in repair, together with the injury which the proprietors of land over which they pass, frequently suffer, require that the viewers should perform their duties under the sanction of an oath or affirmation. Experience proves, that there is no duty which persons are called upon to perform, that requires more firmness in the exercise of it than the laying out of roads; and so essential did the legislature consider the swearing of the viewers before entering on their appointments, that out of abundant caution they have enjoined the clerk of the Sessions to insert in the order, " that the viewers shall be sworn or affirmed *before* they enter on their duties," lest it might be omitted through any neglect or inattention. The act, indeed, leaves nothing to construction, it cannot be evaded. The oath must be administered before the viewers enter upon their duties—and if not, its injunction is expressly disregarded. It makes no difference, whether their duties are judicial or ministerial—the written law must be complied with.

In this case it is clearly proved by the depositions returned with the record, that the re-reviewers were not sworn until after they had viewed the routes, and had returned to the house. They therefore acted in violation of an express provision of the act of assembly, and the proceedings must be quashed.

                                        Proceedings quashed.